# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

The Valspar Corporation, *et al.*,

                    Plaintiffs,          Civ. No. 13-3214 (RHK/LIB)

                                             **MEMORANDUM OPINION**
                                             **AND ORDER**

v.

E.I. DuPont de Nemours and Company, *et al.*,

                    Defendants.

---

Richard Ihrig, James M. Lockhart, James P. McCarthy, John C. Ekman, Jessica L. Meyer, Lindquist & Vennum LLP, Minneapolis, Minnesota, for Plaintiffs.

Shari Ross Lahlou, Crowell & Moring LLP, Washington, D.C., C. Todd Koebele, Peter W. Wanning, Murnane Brandt, PA, St. Paul, Minnesota, for Defendant E.I. DuPont de Nemours and Company.

James Arthur Reeder, Jr., Erica L. Krennerich, Vinson & Elkins LLP, Houston, Texas, Lawrence Zelle, Lindsey A. Davis, Zelle Hofmann Voelbel & Mason LLP, Minneapolis, Minnesota, for Defendant Huntsman International LLC.

---

# INTRODUCTION

Plaintiff The Valspar Corporation ("Valspar")[1] is one of the largest paint and coating producers in the world.  In order to manufacture its products, it utilizes titanium dioxide – a dry, powdered chemical used for whiteness and brightness – purchased from a number of suppliers, including Defendants E.I. DuPont de Nemours and Company ("DuPont") and Huntsman International LLC ("Huntsman").  Valspar alleges in this

---

[1] Technically there are two Plaintiffs, The Valspar Corporation and its wholly owned subsidiary, Valspar Sourcing, Inc.  Following the parties' lead, the Court refers to them jointly with the singular "Valspar."

action that these Defendants, along with others, conspired to artificially inflate titanium

dioxide prices in violation of federal antitrust law.  Presently before the Court are the

Motions of DuPont and Huntsman to transfer Valspar's claims to the District of Delaware

and the Southern District of Texas, respectively.  For the reasons that follow, their

Motions will be granted.[2]

## BACKGROUND

Over the years, Valspar has purchased significant quantities of titanium dioxide

from Defendants.  It alleges that as early as 2002, Defendants conspired with one another

and others to manipulate, raise, or maintain the market and price for titanium dioxide sold

in the United States.  According to Valspar, this conspiracy was successful and resulted

in it paying "supra-competitive, artificially inflated prices."  (Compl. ¶¶ 30, 189.)

It is undisputed that at least some of the purchases Valspar made from DuPont and

Huntsman were governed by agreements containing forum-selection clauses.  For

example, Valspar and DuPont entered into a "Supply Contract" for the purchase of

titanium dioxide, effective from January 1, 2003, to January 1, 2006, which provided the

contract would be "governed by and construed in accordance with the laws of the State of

Delaware" and that "the courts within Delaware will be the only courts of competent

jurisdiction."  (Wanning Aff. Ex. 1, ¶ 15.)  Similarly, Valspar and Huntsman entered into

---

[2] Also named as Defendants in this action are Kronos Worldwide, Inc. ("Kronos") and Millennium Inorganic Chemicals, Inc., now known as Cristal USA Inc. ("Cristal"); they have separately moved to dismiss claims for violation of  Minnesota Statutes § 325D.49 (Count II) and for unjust enrichment (Count III).  After their Motions were filed, however, Valspar agreed to voluntarily dismiss these claims, leaving only the federal antitrust claim for resolution.  (See Doc. Nos. 72, 79.)  Hence, these Motions will be denied as moot.

a "Sales Agreement" for the purchase of titanium dioxide, effective January 1, 2011, through December 31, 2012, providing it would be governed by Texas law and that Valspar "irrevocably submit[ted] to the exclusive jurisdiction of the Federal court . . . located in the Southern District of Texas, Houston Division, . . . solely in respect of the interpretation and enforcement of the provisions of this Agreement, and in respect of the transactions contemplated hereby."  (Reeder Decl. Ex. A at 5.)

Invoking these clauses here, DuPont and Huntsman have separately moved to transfer Valspar's claims to the fora designated in their respective agreements.[3]  Each Motion has been fully briefed and is ripe for disposition.

## STANDARD OF REVIEW

Title 28 U.S.C. § 1404(a) provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  In the "typical case," therefore, a district court considering a § 1404(a) motion "must evaluate both the convenience of the parties and various public-interest considerations" to determine whether transfer is warranted. <u>Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.</u>, __ U.S. __, 134 S. Ct. 568, 581 (2013).  The plaintiff's choice of forum is entitled to "some weight" in the analysis, and the burden rests with the movant to overcome that weight by showing

---

[3] DuPont and Huntsman also have moved to dismiss based on the forum-selection clauses.  But for reasons previously stated, the Court believes transfer (not dismissal) is the appropriate way to enforce those clauses.  (<u>See</u> Doc. No. 92 at 1-2.)

(1) the parties' private interests and (2) other public-interest considerations militate in favor of transfer.  Id. at 581 & n.6.[4]

"The calculus changes, however, when the parties' contract contains a valid forum-selection clause."  Id. at 581.  In that instance, the plaintiff's choice of forum "merits no weight," and a court "should not consider arguments about the parties' private interests," as they previously agreed (contractually) to litigate in a specified forum.  Id. at 581-82.  Furthermore, the plaintiff, as the party flouting the chosen forum, bears the burden of demonstrating the public-interest factors merit transfer.  Id. at 583.  Yet, such factors "will rarely defeat a transfer motion," and a district court "should ordinarily transfer the case to the forum specified" in the parties' agreement.  Id. at 581-82.

## ANALYSIS

### I.    A procedural first step

At the outset, the Court pauses to address a procedural issue raised by the pending Motions.

The parties originally assumed the claims against DuPont and Huntsman could be transferred pursuant to 28 U.S.C. § 1404(a) while leaving behind in this Court the claims against the remaining Defendants.  In other words, the parties simply accepted that a portion of a case may be transferred, rather than an action in its entirety.  But as the Court noted in its March 7, 2014 Order (Doc. No. 92), § 1404(a) provides that "a district court

---

[4] A court faced with a motion to transfer also must determine "whether the action might have been brought in the proposed transferee district."  Austin v. Nestle USA, Inc., 677 F. Supp. 2d 1134, 1136 (D. Minn. 2009) (Kyle, J.) (citation omitted).  Here, it is undisputed the claims against DuPont and Huntsman "might have been brought" in the proposed transferee districts.

-4-

may transfer any *civil action* to any other district or division where it might have been brought."  (emphasis added).  Hence, it plainly authorizes only the transfer of an entire lawsuit.  <u>In re Flight Transp. Corp. Sec. Litig.</u>, 764 F.2d 515, 516 (8th Cir. 1985) (§ 1404(a) "contemplates a plenary transfer"); <u>see also</u> <u>Chrysler Credit Corp. v. Country Chrysler, Inc.</u>, 928 F.2d 1509, 1518 (10th Cir. 1991) ("Section 1404(a) only authorizes the transfer of an entire action, not individual claims.").

To accomplish what DuPont and Huntsman seek, therefore, the Court must proceed in two steps.  First, it must sever the claims against these Defendants under Federal Rule of Civil Procedure 21, creating entirely new civil actions against them, and only *then* may it transfer the severed civil actions pursuant to § 1404(a).  <u>See</u> <u>Toro Co. v. Alsop</u>, 565 F.2d 998, 1000 (8th Cir. 1977) (*per curiam*) (recognizing propriety of district court severing claims under Rule 21 and then transferring them under § 1404(a)).  But while the second step of this process – § 1404(a) – was discussed in the parties' briefs, no mention was made of Rule 21 or the factors to be considered when determining whether severance is appropriate.  Accordingly, the Court requested supplemental briefing on those issues.  (<u>See</u> Doc. No. 92 at 3.)

Having now reviewed those additional submissions, it is clear the legal analysis is unaffected.  Severance under Rule 21 is committed to the Court's sound discretion, <u>see, e.g.</u>, <u>Reinholdson v. Minnesota</u>, 346 F.3d 847, 850 (8th Cir. 2003), and in exercising that discretion, courts typically consider the same general factors elucidating the § 1404(a) analysis, including judicial economy, efficiency, witness convenience, the location of and access to sources of proof, the potential for delay, and similar factors.  <u>See, e.g.</u>, <u>Vutek,</u>

Inc. v. Leggett & Platt, Inc., No. 4:07CV1886, 2008 WL 2483148, at *1 (E.D. Mo. June

17, 2008); Crestone v. Gen. Cigar Holdings, Inc., No. 00 Civ. 3686, 2002 WL 424654, at

*2-3 (S.D.N.Y. Mar. 18, 2002).  Indeed, the parties' supplemental briefs largely rehash

their arguments regarding § 1404(a).

Accordingly, Rule 21 is essentially irrelevant to the Court's analysis.  If the Court

were to conclude the pertinent factors render transfer appropriate under § 1404(a), then

severance, too, would be proper.  See, e.g, Monje v. Spin Master, Inc., No. CV-09-1713,

2013 WL 6498073, at *4 (D. Ariz. Dec. 11, 2013) (noting that in these circumstances,

"[s]everance is a necessary precursor to . . . transfer, and it is justified by the same

reason[s]").  And as set forth below, the Court concludes that the relevant factors indeed

militate in favor of transfer here.

## II.     The § 1404(a) analysis

Seizing upon the Supreme Court's recent decision in Atlantic Marine, DuPont and

Huntsman argue the claims against them must be transferred under § 1404(a) because of

the forum-selection clauses in their agreements with Valspar.  Valspar responds that

(1) its claims fall outside the reach of the forum-selection clauses and (2) even if the

clauses apply, the Court should exercise its discretion not to transfer the claims to avoid

"claim splitting."  Neither contention is persuasive.

### A.     The forum-selection clauses are applicable

Valspar first argues the forum-selection clauses are irrelevant here because its

antitrust claims are not encompassed by them.  (Mem. in Opp'n (Doc. No. 75) at 6-8.)  It

alleges that it paid artificially inflated prices for titanium dioxide due to an unlawful

conspiracy among Defendants, and to succeed on these claims, it contends it must only "show an agreement in the form of a contract, combination, or conspiracy that imposes an unreasonable restraint of trade." (Id.) As the agreements (purportedly) "do not establish a price for" titanium dioxide, and because its claims do not challenge the moving Defendants' performance under the agreements or even require the Court to interpret them, their "mere existence," argues Valspar, "is insufficient to support the conclusion that [its] antitrust claims are within the scope of the forum selection clauses." (Id.) There are two problems with this argument.

First, Valspar has its facts wrong. It contends the agreements with DuPont and Huntsman did not set the price for its purchases of titanium dioxide, but that is simply not the case. (See Wanning Aff. Ex. 1, ¶ 4 (Valspar-DuPont agreement setting per-ton prices for different types of titanium dioxide); Reeder Decl. Ex. A at 2 (Valspar-Huntsman agreement setting price per pound for titanium dioxide).) As DuPont aptly notes, "[t]he very essence of Valspar's claim is a challenge to those contractually agreed-upon prices," which set the minuend for determining Valspar's (alleged) damages.[5] (DuPont Reply (Doc. No. 87) at 5.) As a result, "Valspar's claims necessarily implicate [the] agreements." (Id.)

_____

[5] A "minuend" is a number from which another number (known as the "subtrahend") is subtracted. http://www.merriam-webster.com/dictionary/minuend (last visited April 21, 2014). Here, Valspar's alleged damages equal the allegedly "inflated" price it agreed to pay for titanium dioxide (the minuend) minus the amount it would have paid absent the alleged "conspiracy" (the subtrahend). See, e.g., City of Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 268 n.20 (3rd Cir. 1998) ("The proper measure of damages for a price-fixing violation under the Sherman Act is the difference between the prices actually paid and those that would have been paid absent the conspiracy.").

Second, and more importantly, the forum-selection clauses are broader than Valspar contends – and broad enough to reach the antitrust claims alleged here.  The clause in the Huntsman agreement, for example, provides that Valspar "irrevocably submit[s] to the exclusive jurisdiction of the Federal court . . . located in the Southern District of Texas, Houston Division, . . . solely in respect of the interpretation and enforcement of the provisions of this Agreement, *and in respect of the transactions contemplated hereby*."  (Reeder Decl. Ex. A at 5 (emphasis added).)  The "transactions contemplated" by the agreement were Valspar's purchases of titanium dioxide from Huntsman, allegedly at artificially inflated prices.  It is these very purchases that form the basis of Valspar's claims against Huntsman and, indeed, give it standing to sue here.  The same is true with respect to Valspar's claims against DuPont.  (See Wanning Aff. Ex. 1, ¶ 15 (providing that Delaware courts "will be the only courts of competent jurisdiction" under the agreement).)  In the Court's view, therefore, the claims alleged in this action fall within the scope of the forum-selection clauses.

This can hardly come as a surprise to Valspar, as another federal court has already reached the same conclusion.  In 2010, a putative class of titanium-dioxide purchasers commenced an antitrust action against DuPont, Huntsman, and others in the United States District Court for the District of Maryland (the "Maryland Action"), alleging that the defendants had engaged in a price-fixing conspiracy.[6]  There, as here, certain defendants argued that forum-selection clauses in their supply agreements – clauses identical to those at issue in this case – applied to the plaintiffs' claims, while the plaintiffs argued their

---

[6] The action was certified as a class and later settled, but Valspar opted out of the settlement.

claims were beyond the reach of those clauses.  The Maryland court agreed with the defendants, noting that "[b]ecause the Sherman Act claims in this case involve each customer's purchase of titanium dioxide *pursuant to their agreements*, the forum selection clauses are triggered."  <u>In re Titanium Dioxide Antitrust Litig.</u>, 962 F. Supp. 2d 840, 858 (D. Md. 2013) (emphasis added).  The court specifically rejected the argument Valspar makes here – the plaintiffs' claims did "not arise out of the agreements to purchase titanium dioxide" – because they had "a potential cause of action only if they purchased titanium dioxide from one of the [defendants], and each [plaintiff] purchased pursuant to a contract."  <u>Id.</u>  This Court perceives no reason to reach a different result.[7]

### B.      The forum-selection clauses must be enforced

With the applicability of the forum-selection clauses established, the outcome of the instant Motions essentially becomes a foregone conclusion.  As the Supreme Court noted in <u>Atlantic Marine</u>, when a defendant invokes a valid forum-selection clause, "a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer."  134 S. Ct. at 575.  In the Court's view, no "extraordinary circumstances" that "clearly disfavor transfer" are present here.

Valspar's argument for rejecting the forum-selection clauses sounds in efficiency.  It notes that its claims allege Defendants conspired to "fix" the price of titanium dioxide,

---

[7] Valspar relies upon <u>Imation Corp. v. Quantum Corp.</u>, Civ. No. 01-1798, 2002 WL 385550 (D. Minn. Mar. 8, 2002) (Kyle, J.), <u>Terra International, Inc. v. Mississippi Chemical Corp.</u>, 119 F.3d 688 (8th Cir. 1997), and <u>In re Wholesale Grocery Products Antitrust Litigation</u>, 707 F.3d 917 (8th Cir. 2013), but those cases do not aid its cause.  <u>Terra</u> actually *affirmed* the district court's decision to enforce a contractual forum-selection clause even though the plaintiff had alleged *tort* claims.  <u>See</u> 119 F.3d at 694-95.  And in <u>Imation</u> and <u>Wholesale Grocery Products</u>, unlike here, the agreements in question did not set the price for the plaintiffs' purchases and thus were unrelated to the plaintiffs' claims.

and there exists a strong preference for co-conspirators to be tried together in one action. See, e.g., United States v. Joiner, 418 F.3d 863, 868 (8th Cir. 2005).  But that preference is not absolute, see id., and the Court does not believe the efficiency and economy achieved by trying interrelated claims in one forum should trump the forum-selection clauses agreed to by Valspar.  See, e.g., 1-Stop Fin. Serv. Ctrs. of Am., LLC v. Astonish Results, LLC, No. A-13-CA-961, 2014 WL 279669, at *6 (W.D. Tex. Jan. 23, 2014) (argument that severance and transfer of related claims "would result in an 'egregious waste of judicial resources'" did not "rise to a level sufficient to deny a motion to transfer").  In fact, the efficiency and economy that could be achieved by a single trial would largely inure to *Valspar's* benefit – precisely what the Supreme Court has counseled is *not* a relevant consideration.  Atl. Marine, 134 S. Ct. at 582 (a court "should not consider arguments about the [plaintiff's] private interests"); see also Excentus Corp. v. Giant Eagle, Inc., Civ. A. No. 13-178, 2014 WL 923520, at *10 (W.D. Pa. Mar. 10, 2014).  It is always more expeditious to try related claims in one forum rather than several, but allowing efficiency and economy to rule the day would effectively swallow Atlantic Marine's holding in every case with multiple defendants.

Valspar also argues that only *certain* of its purchases from Huntsman occurred while agreements containing forum-selection clauses were in place, and hence "claims relating to [] years [when no such clause existed] should remain in Minnesota regardless." (Mem. in Opp'n at 11.)  But this contention falters for the very reasons offered elsewhere by Valspar.  With *some* of the claims against Huntsman subject to forum-selection clauses and thus transferable, in the Court's view it makes eminent sense

to transfer *all* of the claims against it – even those arguably *not* subject to such clauses – in order to promote the very efficiency Valspar espouses.  Leaving only a portion of the claims against Huntsman pending in this Court while transferring others would run the risk of inconsistent verdicts and wasted resources that Valspar seeks to avoid.  <u>See, e.g.</u>, <u>Compass Bank v. Palmer</u>, No. A-13-CA-831, 2014 WL 355986, at *7 (W.D. Tex. Jan. 30, 2014) ("Because the Court must transfer the case with respect to the Notes containing forum selection provisions, it makes little sense to . . . keep the matter . . . with respect to the Notes without such venue restrictions.").

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, it is **ORDERED**:

1.      Valspar's claims against DuPont are **SEVERED** pursuant to Federal Rule of Civil Procedure 21.  The Clerk of the Court is directed to establish a new docket number for the resulting case, to docket this Order as the first entry in the newly created case, and to attach all documents filed in this case up to the date of this Order to that first docket entry.  The plaintiffs in the newly created case are The Valspar Corporation and Valspar Sourcing, Inc.  The defendant in the newly created case is E.I. DuPont de Nemours and Company.  It is further ordered that DuPont's Motion to Transfer (Doc. No. 62) is **GRANTED** and the newly created case is **TRANSFERRED** to the United States District Court for the District of Delaware.  The Clerk of the Court is directed to take all steps necessary to effectuate this transfer in an expeditious fashion;

2.      Valspar's claims against Huntsman are **SEVERED** pursuant to Federal Rule of Civil Procedure 21.  The Clerk of the Court is directed to establish a new docket number for the resulting case, to docket this Order as the first entry in the newly created case, and to attach all documents filed in this case up to the date of this Order to that first docket entry.  The plaintiffs in the newly created case are The Valspar Corporation and Valspar Sourcing, Inc.  The defendant in the newly created case is Huntsman International, LLC.  It is further ordered that Huntsman's Motion to Transfer or, in the alternative, to Dismiss (Doc. No. 41) is **GRANTED IN PART** and the newly created case is **TRANSFERRED** to the United States District Court for the Southern District of Texas.  The Clerk of the Court is directed to take all steps necessary to effectuate this transfer in an expeditious fashion;

3.      The Motions to Dismiss filed by Defendants DuPont (Doc. No. 53), Cristal (Doc. No. 44), and Kronos (Doc. No. 54) are **DENIED AS MOOT**; and

4.      The hearing on the above Motions, currently scheduled for May 14, 2014, is **CANCELED**.

Date:  April 21, 2014                          s/Richard H. Kyle_____
                                               RICHARD H. KYLE
                                               United States District Judge